USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/5/13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - -X
                        :

JESSE LANG,
                        :

          Plaintiff,
                        :

        -against-
                        :

NEW YORK CITY HEALTH AND
HOSPITALS CORPORATION,
                        :

         Defendant.     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - -X

12 Civ. 5523 (WHP)

MEMORANDUM & ORDER

WILLIAM H. PAULEY III, District Judge:

        Plaintiff pro se Jesse Lang, a forty-four year old African-American man, brings

this employment discrimination action against the New York City Health and Hospitals

Corporation ("HHC"). HHC moves to dismiss Lang's complaint pursuant to Federal Rule of

Civil Procedure 12(b) for untimeliness, failure to exhaust administrative remedies, and failure to

state a claim upon which relief may be granted. For the following reasons, HHC's motion to

dismiss is granted in part and denied in part.

BACKGROUND

I.     Factual Allegations

        Lang has been employed for ten years as a Service Aide at Lincoln Hospital

("Lincoln"), a facility operated by HHC.[1] Lang alleges that in 2010, after a workplace incident

involving a supply cart hitting an elevator door, HHC ordered him to submit to a mental health

---

[1] Declaration of Laura C. Rowntree, dated 1/11/13 ("Rowntree Decl.") Ex. B: Letter to Lang from
Galina Nisman, dated 2/11/11 ("Nisman Letter"); Rowntree Decl. Ex. B: Amended Charge of
Discrimination, dated 6/22/11 ("Am. Charge") ¶ 1.

assessment. (Am. Charge ¶¶ 4–5.) HHC psychiatrist Steven Fayer conducted the assessment on January 25, 2011 and concluded that Lang was medically unable to perform his essential duties.[2] On February 11, 2011, HHC placed Lang on an involuntary medical leave for up to one year in accord with Section 6:2:2 and Regulation 1 of HHC's Personnel Rules and Regulations. (Nisman Letter.)

On May 6, 2011, Lang filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging that he was "targeted for termination on the basis of [his] race" so that he could be replaced by a white or Hispanic employee, and that he was given "less desirable duties" than white and Hispanic individuals with the same job title.[3] Lang also alleged that he was terminated because of the "perception, or actuality" that he had a mental disability. (Charge ¶ 3.) Further, Lang asserted that he was forced to participate in an involuntary mental health screening "where the psychiatrist described indicia of my racial background as evidence of a mental disorder." (Charge ¶ 3.)

On June 22, 2011, Lang filed an Amended Charge with the EEOC. Supplementing his earlier claims, Lang alleged that HHC "systematically excluded" African-Americans from employment at Lincoln and hired white and Hispanic workers, leading to a decade-long decline in the percentage of African-American employees. (Am. Charge ¶ 1.) Lang also alleged that HHC utilizes involuntary mental health assessments and medical leave as part of a "pattern of racial discrimination" against African Americans and that the supply cart incident was a pretext for a mental health assessment. (Am. Charge ¶ 7.)

---

[2] Nisman Letter; Compl. ¶ II.E.
[3] Rowntree Decl. Ex. C: Charge of Discrimination, dated 5/4/11 ("Charge") ¶¶ 1-2.

On October 11, 2011, HHC reinstated Lang after two psychiatrists determined he was competent to perform his employment duties. (Compl. ¶ II.E.) On February 21, 2012, the EEOC closed its investigation and issued a right-to-sue letter. (Compl. Ex. A.) On June 25, 2012, HHC suspended Lang from his job pending an investigation of inappropriate behavior and conduct unbecoming. (Compl. Ex. B.) Lang filed this action on July 17, 2012, alleging violations of Title VII, the Americans with Disabilities Act ("ADA") and the Age Discrimination in Employment Act ("ADEA").

## DISCUSSION

I.    Legal Standard

On a motion to dismiss, a court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor. See Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1998). Nonetheless, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all of the allegations in the complaint are true." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007) (requiring plaintiff to plead "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [her claim]"). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citation omitted). A court's "consideration [on a motion to dismiss] is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by

reference, and to matters of which judicial notice may be taken." <u>Allen v. WestPoint-Pepperell, Inc.</u>, 945 F.2d 40, 44 (2d Cir. 1991). It is proper for courts to consider a plaintiff's relevant filings with the EEOC in deciding a motion to dismiss, "without converting the proceeding to one for summary judgment." <u>Holowecki v. Fed. Express Corp.</u>, 440 F.3d 558, 565-66 (2d Cir. 2006).

Because Lang is a <u>pro se</u> litigant, this Court construes his complaint liberally and interprets it to raise the strongest arguments it suggests. <u>See Weixel v. Bd. of Educ.</u>, 287 F.3d 138, 146 (2d Cir. 2002); <u>see also Haines v. Kerner</u>, 404 U.S. 519, 520 (1972) (a <u>pro se</u> litigant's submissions are held to "less stringent standards than [those] drafted by lawyers"). Nevertheless, the Court need not accept as true "conclusions of law or unwarranted deductions of fact." <u>First Nationwide Bank v. Gelt Funding Corp.</u>, 27 F.3d 763, 771 (2d Cir. 1994).

II.    <u>Timeliness</u>

A.    <u>Title VII & ADA Claims</u>

To bring a Title VII or ADA action in federal court, a plaintiff must first file a timely charge with the EEOC, receive a right-to-sue letter, and commence his action within ninety days of receiving such letter. 42 U.S.C. § 2000e-5(e)-(f) (Title VII exhaustion procedures); 42 U.S.C. § 12117(a) (ADA exhaustion procedures); <u>see also Tiberio v. Allergy Asthma Immunology of Rochester</u>, 664 F.3d 35, 37 (2d Cir. 2011). Lang received his right-to-sue letter on February 21, 2012, but did not commence this action until July 17, 2012, 148 days later. Accordingly, Lang's Title VII and ADA actions are time-barred. The fact that Lang is a <u>pro se</u> litigant is immaterial in this context. <u>See Adams-Shango v. N.Y.C. Dep't of Educ.</u>, No. 11 Civ. 4619 (RJS), 2012 WL 3834668, at *3 (S.D.N.Y. Aug. 22, 2012) ("While the submissions

of <u>pro se</u> plaintiffs are liberally construed, such plaintiffs are not relieved of the requirements of statutory filing deadlines.").

Lang acknowledges that he filed this action outside the ninety day limit, but he contends that his complaint is still timely due to equitable tolling. Equitable tolling is available in "rare and exceptional circumstances," when a plaintiff "(1) has acted with reasonable diligence during the time period [he] seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." <u>Zerilli-Edelglass v. N.Y.C. Transit Auth.</u>, 333 F.3d 74, 80-81 (2d Cir. 2003); <u>see also</u> <u>Boykin v. KeyCorp</u>, 521 F.3d 202, 218 (2d Cir. 2008). Generally, equitable tolling is considered appropriate "where the plaintiff actively pursued judicial remedies but filed a defective pleading during the specified time period, where plaintiff was unaware of his or her cause of action due to misleading conduct of the defendant, or where a plaintiff's medical condition or mental impairment prevented [him] from proceeding in a timely fashion." <u>Zerilli-Edelglass</u>, 333 F.3d at 80 (internal citations and quotation marks omitted).

Lang explains that he did not commence this action in a timely manner because he was "reinstated back to [his] job on October 11, 2011 with full benefits." (Compl. Ex. B.) It was not until he was once again suspended from his job on June 25, 2012 that he decided to pursue this action. Lang's explanation for his delay is insufficient because it does not indicate that he acted "with reasonable diligence" during the time period he seeks to have tolled. Instead, he actively chose to refrain from filing his action during the period in question, presumably because he felt his reinstatement made it unnecessary. <u>See e.g.</u>, <u>Smith v. Sebelius</u>, No. 10 Civ. 6356 (JSR) (DF), 2011 WL 7427733, at *6 (S.D.N.Y. Dec. 28, 2011) ("Taking time to consider the

filing of an action . . . cannot substitute for the diligence that the courts require to invoke equitable tolling."). Nor is there anything "extraordinary" about the circumstances surrounding Lang's delay in filing. Accordingly, equitable tolling does not apply and Lang's Title VII and ADA claims are dismissed.

### B. ADEA Claim

As with Title VII and ADA claims, a plaintiff bringing an ADEA claim must first exhaust his administrative remedies, obtain a right-to-sue letter, and commence his action within ninety days of receiving the letter. 29 U.S.C. § 626(d)-(e) (ADEA exhaustion procedures); see also Sherlock v. Montefiore Med. Ctr., 84 F.3d 522, 525 (2d Cir. 1996). A plaintiff may assert claims "not raised in an EEOC complaint, however . . . if they are reasonably related to the claim filed with the agency." Zito v. Fried, Frank, Harris, Shriver & Jacobson, LLP, 869 F. Supp. 2d 378, 391 (S.D.N.Y. 2012) (internal citations omitted).

Lang alleges age discrimination in his Complaint, but failed to do so in either of his EEOC Charges. Compare Compl. ¶ II.D with Charge; Am. Charge. Because Lang failed to raise his age discrimination claim in the EEOC charges, he has not exhausted his administrative remedies for that claim. And, as explained above, even if Lang's ADEA claim is "reasonably related" to his Title VII and ADA claims, it is untimely. As such, Lang's ADEA claim is dismissed.

### C. Section 1981 and New York State Human Rights Law

In his opposing papers, Lang argues that 42 U.S.C. § 1981 and the New York State Human Rights Law ("NYSHRL") grant him three years to file a lawsuit in federal court. (Lang Opp. Aff., dated 2/13/13 at 1.) HHC contends that Lang's attempt to add new claims must

fail because it "is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss." O'Brien v. Nat'l Prop. Analysts Partners, 719 F. Supp. 222, 229 (S.D.N.Y. 1989). But courts have construed allegations in pro se oppositions as motions to amend in view of the duty to construe pro se filings liberally. See Santiago v. Pressley, No. 10 Civ. 4797(PAE), 2011 WL 6748386, at *5 (S.D.N.Y. Dec. 23, 2011). Because Lang's "amendment" simply articulates additional claims that his original complaint could have been construed to allege, this Court will consider the section 1981 and NYSHRL claims. See, e.g., Allen v. Trans World Airlines, Inc., No. 78 Civ. 4041 (CSH), 1984 WL 1371, (S.D.N.Y. Dec. 21, 1984) ("Because the complaint is of racial discrimination in employment, it can readily be construed as stating a claim under § 1981[.]").

The statute of limitations for section 1981 claims in New York is three years. See Patterson v. Cnty. of Oneida, 375 F.3d 206, 225 (2d Cir. 2004). Unlike Title VII, section 1981 claims are not subject to an exhaustion requirement. Holt v. Cont'l Grp., Inc., 708 F.2d 87, 89-90 (2d Cir. 1983). Three years is also the statute of limitations for a claim brought under the NYSHRL. N.Y. C.P.L.R. § 214(2); Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 714 (2d Cir. 1996). Because the discriminatory conduct alleged by Lang began in late 2010, and Lang commenced this action on July 17, 2012, these claims are timely. Accordingly, this Court considers whether Lang's allegations—accepted as true—state plausible claims under section 1981 and the NYSHRL.

II. Sufficiency of the Section 1981 and NYSHRL Claims

Section 1981 prohibits racial discrimination in contractual relationships, including employment. 42 U.S.C. § 1981 ("[a]ll persons . . . shall have the same right . . . to make and

enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens."); Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 68 (2d Cir. 2000). A municipal entity can only be held liable under section 1981 if the requirements for municipal liability under 42 U.S.C. § 1983 are met. Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 735-36 (1989). Thus, Lang's injury must have been caused by a municipal policy or custom. See Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978). To show a policy or custom, Lang need not identify an express rule or regulation. It is sufficient to show that the discriminatory practices are so "persistent and widespread . . . as to constitute a custom or usage with the force of law" or that a discriminatory practice of subordinate employees was "so manifest as to imply the constructive acquiescence of senior policy-making officials." Sorlucco v. N.Y.C. Police Dep't, 971 F.2d 864, 870-71 (2d Cir. 1992) (internal quotation marks omitted).

Lang alleges that HHC "targeted" him for "termination on the basis of [his] race . . . . so that [he] could be replaced by someone of White or Hispanic origin" and that he was given less desirable duties than white and Hispanic service aides. (Am. Charge ¶¶ 1-2.) Lang also alleges that his mandatory mental health assessment was a pretext, based on a frivolous incident with a supply cart, and that the psychiatrist "described indicia of [his] racial background as evidence of a mental disorder." (Am. Charge ¶¶ 3, 7.) Furthermore, Lang contends that his treatment was part of a larger effort by Lincoln to "systematically exclude[]" African Americans and replace them "solely by white and Hispanic workers[.]" (Am. Charge ¶ 1.) To support his claim, Lang alleges that the proportion of African-American workers has decreased from 45% to 2% during the ten years of his employment, despite Lincoln's location in "an area with a high

Black population." (Am. Charge ¶ 1.) These allegations, taken as true, adequately plead <u>Monell</u> liability for a section 1981 claim in satisfaction of <u>Twombly</u>'s plausibility standard. <u>See Iqbal</u>, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement[.]'"). Accordingly, HHC's motion to dismiss Lang's section 1981 claim is denied.

Since claims under the NYSHRL are analyzed under the same standards as section 1981 claims, <u>see Conway v. Microsoft Corp.</u>, 414 F. Supp. 2d 450, 458 (S.D.N.Y. 2006), HHC's motion to dismiss these claims is denied as well.

CONCLUSION

For the foregoing reasons, HHC's motion to dismiss Lang's Title VII, ADA and ADEA claims is granted. HHC's motion to dismiss Lang's § 1981 and New York State Human Rights Law claims is denied. The Clerk of Court is directed to terminate the motions pending at Docket Nos. 15 and 25.

Dated: September 5, 2013
New York, New York

SO ORDERED:

WILLIAM H. PAULEY III
U.S.D.J

-9-

*Copies to:*

Jesse Lang
245 East 149th St.
Apt. # 3B
Bronx, NY 10451
*Plaintiff <u>Pro</u> <u>Se</u>*

Laura C. Rowntree, Esq.
New York City Law Department
100 Church Street, 3rd Fl.
Room 3-310
New York, NY 10007
*Counsel for Defendant*